LAMY, Judge.
The defendant was convicted of assault by drive-by shooting, a violation of La.R.S. 14:37.1. She was subsequently sentenced to five years at hard labor. On appeal, the defendant contends that the evidence presented at trial was insufficient to support her conviction and that the sentence imposed is excessive. We affirm.
Factual and Procedural Background
This appeal stems from a December 28, 1996 drive-by shooting in Alexandria, Louisiana. The incident occurred at the corner of 16 th and Levin Streets where several people were gathered. According to the trial testimony of Kenneth Piper, the defendant, Deneice Dixon, had been in the area earlier in the day, had a discussion with an individual referred to as Freddie Boo, and left the area in her vehicle. Piper stated that the defendant later returned to the area in her vehicle and was accompanied by three men with bandanas over their faces. He testified that the car arrived at the area, left momentarily, and then returned. On the second approach, the car stopped and several shots were fired from the car. The record indicates that Marcus HPennywell sustained a gunshot wound to the leg and was taken to a nearby hospital.
Dixon was charged by bill of information, as a principal, with assault by drive-by shooting, a violation of La.R.S. 14:37.1. See also La.R.S. 14:24. On July 25, 1997, the defendant waived formal arraignment and entered a plea of not guilty. Following a September 24, 1998 jury trial, the defendant was found guilty. The trial court sentenced Dixon to serve five years at hard labor. This sentence was imposed with credit for time served. A subsequently filed motion to reconsider sentence was denied.
Dixon appeals assigning the following as error:
1. The evidence presented at trial, when viewed in a light most favorable to the prosecution, was insufficient to sustain a verdict of guilty as charged.
2. The sentence imposed by the trial court was cruel, unusual and excessive, in violation of Article I, ■§ 20 of the Louisiana Constitution of 1974.
Discussion

Sufficiency of the Evidence

In this first assignment of error, the defendant contends that the witness testimony identifying her as the driver of the car, namely that of Marcus Pennywell and Kenneth Piper, is not credible. Dixon maintains that inconsistencies in their testimony and their criminal records render them unreliable witnesses. Furthermore, the remaining witness testified only that she saw Dixon’s car driving from the scene and that she did not see the driver. The defendant contends that, without corroborating evidence, this witness testimony is insufficient to support her conviction.
EThe elements of assault by drive-by shooting are set forth in La.R.S. 14:37.1 as follows:
A. Assault by drive-by shooting is an assault committed with a firearm when an offender uses a motor vehicle to facilitate the assault.
[[Image here]]
C. As used in this Section and in R.S. 14:30(A)(1) apd 30.1(A)(2), the term “drive-by shooting” means the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to Mil, cause harm to, or frighten another person.
Furthermore, La.R.S. 14:24 provides the following definition of “principal”:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit *1252 the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
As explained by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), when sufficiency of the evidence is at issue on appeal, an appellate court must view the evidence in a light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. “The rational factfinder standard of Jackson v. Virginia ... allows an appellate court to impinge on ‘the actual factfinder’s discretion ... only to the extent necessary to guarantee the fundamental protection of due process of law.’ ” State v. Juluke, 98-0341, p. 4 (La. 1/8/99); 725 So.2d 1291, 1293. Furthermore, the Louisiana Supreme Court has explained that, since the Jackson standard has a limited purpose, it does not permit a reviewing court to second guess the rational credibility determinations of the factfinder. Id. citing State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983).
LOfficer MacArthur Stevenson of the Alexandria Police Department testified that, on the night of incident, he was dispatched to the hospital in reference to a possible assault. He stated that he was directed to Marcus Pennywell as the victim of the shooting and that, although he didn’t extensively question him, Pennywell described the car as “a big white older model vehicle.” The matter was turned over to a detective.
Detective Rodney Howard, an investigator with the Alexandria Police Department, stated that he was assigned to the case the following day and that he initially began to look for a beige or white vehicle. He stated that he interviewed Pennywell and two other witnesses, Kenneth Piper and Derrick Ross, as part of his investigation. Detective Howard testified that, although his investigation did not reveal the identity of the shooter, he obtained a warrant for Dixon’s arrest due to information received from the witnesses.
The State also presented the testimony of Kenneth Piper, a witness in the area of 16th Street and Levin Street at the time Marcus Pennywell was shot. He testified that, prior to the shooting, he saw the defendant and a man referred to as Freddie Boo having a discussion. Piper stated that the defendant left the area upset and that he heard her say that she would be back. He also stated that Dixon said that she was “going to get her brother to handle that or something. She’ll be back.”
Piper testified that he saw Dixon later in her car and that she was accompanied by three men whose faces were covered with blue bandanas. Piper described the car as beige in color, but that it could appear white at night. He testified that he had previously seen Dixon in the car and that he had gone to school with her. Piper stated | Bthat upon returning, the car pulled up to the area and stopped. He said that Dixon was driving the vehicle and that there was no doubt in his mind at all as to her identity. He said that the car left, went around the block, and that upon returning, four or five shots were fired. Piper stated that, before the shots were fired, he could see that the defendant was the driver. After the shots were fired, the car left the .area at a high rate of speed. Piper stated that Pennywell “came limping from around the house saying he was shot....” Piper then took Pennywell to the hospital.
Further, Marcus Pennywell testified that on the night he was struck by the bullet, he was standing on the sidewalk with Piper, Ross, and several others. He said that there were eight or nine shots fired and that there were no other cars in the area. Pennywell testified that at the time of the shooting, he did not realize who the driver of the ear was from which the shots were fired. Pennywell also testified that he had encountered the defendant after the shooting, in May 1998, and that *1253 he asked her what had happened. He testified that the defendant told him that she and Freddie Boo had gotten into a disagreement and that she had gone to get her brother to handle the situation.
The final witness called by the State was Linda Piper, a nearby resident. She stated that she heard gunshots and that she ran outside after the gunshots ceased. She stated that she could see the back of the defendant’s car going across Levin Street. The witness stated that she had seen the defendant’s car in the area almost daily as the defendant frequently visited someone who lived behind her house. Ms. Piper confirmed that, although she could identify the car, she could not see the driver.
lain support of her defense, Dixon offered the testimony of Monique Lee, a cousin. Lee stated that she recalled Dixon having a discussion with Freddie Boo, but that the defendant was visiting Lee’s house during the time of the shooting. Lee testified that Dixon lived across the street and that during the time Dixon was visiting at her house, Dixon’s car remained across the street.
The defendant contends that the version of events offered by Lee is more credible than that offered by the State. In particular, Dixon points to inconsistencies involving witness testimony as to the timing of shooting and the color of the car involved. Further, Dixon points to Kenneth Piper’s and Pennywell’s prior criminal convictions. The only other witness testifying for the State, Linda Piper, only identified the car and was not able to identify the defendant as the driver. The testimony of these witnesses contradicted the testimony of Monique Lee who testified that the defendant was at her house.
As previously stated, it is the role of the factfinder to weigh the respective credibility of witnesses presented at trial. See State v. Lambert, 97-64 (La.App. 3 Cir. 9/30/98); 720 So.2d 724. In Juluke, 98-0341, p. 5; 725 So.2d at 1293, the Louisiana Supreme Court has recently explained that:
In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court ... “does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion.” State v. Captville, 448 So.2d 676, 680 (La.1984) (emphasis in original). Instead, the reviewing court must “evaluate[ ] the evidence in the light most favorable to the prosecution and determine[ ] whether the alternative hypothesis is sufficiently reasonable that a rational juror could not ‘have found proof of guilt beyond a reasonable doubt.’ ” Id. (quoting Jackson, 443 U.S. at 324, 99 S.Ct. at 2792).
|7The guilty verdict entered by the jury indicates reliance on the State’s witnesses. Our review of the record reveals evidence sufficient to support the jury’s finding. Kenneth Piper testified that the defendant had been in an argument in the area earlier in the day and that she threatened to return with her brother. Furthermore, he stated that the defendant, driving her car, returned later in the day and that shots were fired. Piper stated he was “positive” that the driver of the car was Dixon. Pen-nywell, who stated that he did not see the defendant driving the car, testified as to a subsequent inculpatory statement made by the defendant. Finally, Linda Piper stated that she observed the defendant’s car leaving the scene. We conclude that, viewed in a light most favorable to the State, this evidence was sufficient to allow any rational trier of fact to find the essential elements of assault by drive-by shooting proven beyond a reasonable doubt.
We find this assignment of error to be without merit.

Excessiveness of the Sentence

The defendant next argues that the five-year sentence imposed by the trial court was cruel, unusual, and excessive, in violation of La. Const, art. I, § 20. She *1254 maintains in her brief to this court that the trial judge failed to consider several mitigating circumstances and that she was sentenced to the statutory maximum even though she “is clearly not the most egregious offender.”
The penalty range for assault by drive-by shooting is provided by La.R.S. 14:37.1(B) as follows:
Whoever commits an assault by drive-by shooting shall be imprisoned for not less than one year nor more than five years, with or without hard labor, and without benefit of suspension of sentence.
In State v. Lobato, 608 So.2d 789 (La. 1992), the Louisiana Supreme Court stated that an excessiveness inquiry is twofold. First, the reviewing court determines whether the sentencing court adequately complied with La.Code Crim.P. art. 894.1. Id. “It is not necessary that the trial court list every aggravating and mitigating factor as long as the record reflects the guidelines of LSA-C.Cr.P. Art. 894.1 were adequately considered.” Id. at 751 citing State v. Smith, 433 So.2d 688 (La.1983). Next, the reviewing court must inquire whether the sentence imposed is too severe given the circumstances of the case and the defendant’s background. Id. The supreme court discussed the characteristics of an unconstitutionally excessive sentence as follows:
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Square, 433 So.2d 104 (La.1983).
Id. at 751.
In sentencing the defendant, the trial judge articulated his reasons for the sentence as follows:
Well, Ms. Dixon, you were previously convicted of assault by a drive-by shooting, which is in violation of [La.R.S.] 1437.1. The penalty for that is not less than one year nor more than five years, with or without hard labor, and without benefit of suspension of sentence. So, I’ve got to give you a sentence with or without hard labor that cannot be suspended. And, if you look, at the sentencing guidelines, 894.1, there is undue risk that during-it says: “The court should impose a sentence of imprisonment if any of the following occurs; that | flthere is an undue risk that during the period of a suspended sentence or probation that you will commit another crime.” I can’t give you probation, because this is a case that I cannot suspend your sentence, but I don’t know whether or not that would apply or not. I don’t know if you would commit another crime during your probationary period. I do not think that (a)(2) applies, but I do think that (3) does apply; a lesser sentence would deprecate the seriousness of your crime.
Basically, what the facts of the case were was that you were involved in an argument with a person and you told him-apparently there were some words and some names exchanged, and you told him you were going to be back-and you were going to get your brother and you were going to be back. And that’s what you did. And when you came back there were shots fired from your car; some people said four, some people said eight. There were numerous people standing in the area where the shots were fired, which could have caused seriously [sic] bodily harm to all those individuals that were there. To me this is an extremely seri *1255 ous case because you, although not the shooter-there is no information that you were the person who did the shooting--you were the person that was driving the automobile. But you are the one that got in the argument. You are the one that went to go get the people to shoot at these folks and you are the one that drove them there. And you are the one that drove them away. So, although you weren’t the person who was doing the shooting, I think you have a lot of culpability for this crime. I have looked at the sentencing guidelines under 894(b)(1) through (b)(21) are aggravating circumstances, and I have looked at the mitigating circumstances, (22) through (32). So basically, what I have to look at is a sentence between one year and five years. And I think that because of the conduct that was involved in here, a drive-by shooting, which is an extremely serious situation, especially because one person was hit with a bullet. It was in his knee or his ankle, I can’t (Interrupted)
BY MR. SHANNON [Assistant District Attorney]:
Knee. Right above the knee.
BY THE COURT:
In his knee. Thank God that we don’t have — -—-I don’t know why people don’t get hit in drive-by shootings around here, but with the bullets and the amount of people that were there, it’s--we’re lucky that someone else didn’t get hit in another place.
I IMPOSITION OF SENTENCE
Based upon the conduct that was involved, and because, as I stated earlier, the sentence that I have to give you is between one year and five years, either with hard labor or without hard labor, the sentence of the Court will be that you be sentenced to serve five years at hard labor with the Department of Corrections, and you are entitled to credit for all time that you have served_
Our review of the trial judge’s reasons for imposition of sentence indicates that the factors of La.Code Crim.P. art. 894.1 were adequately considered. Although no particular mitigating factors were listed, the judge stated that he did consider them. Furthermore, several aggravating factors were listed. First, the trial judge stated that the defendant was the instigator of the crime as she had been involved in the earlier dispute, organized the group, and drove the car to and from the scene. The reasons for sentencing also indicate that the judge considered the crime to be serious as it involved several people standing in the area who could have been seriously injured. Additionally, the judge stated that he felt a lesser sentence would deprecate the seriousness of the defendant’s crime.
Considering these factors, we conclude that the lower court adequately complied with Article 894.1. Further, although maximum sentences are reserved for the most egregious of offenders, see State v. Rachal, 97-642 (La.App. 3 Cir. 10/29/97); 703 So.2d 678, writ denied, 97-2978 (La.3/27/98); 716 So.2d 884, we do not find that the sentence imposed is grossly out of proportion to the seriousness of the crime given the circumstances articulated in the oral reasons.
This assignment of error lacks merit.
DECREE
For the foregoing reasons, the conviction and sentence of the defendant, De-neice Michelle Dixon, are affirmed.
AFFIRMED.